# CIRCUIT COURT OF BALTIMORE CITY

Filed January 24, 1893.

## ROBERT A. SLOAN ET. AL.

### VS.

## THOMAS MARSHALL SMITH.

*Marshall, Marbury & Bowdoin* for plaintiffs.

*Barton & Wilmer, James M. Ambler* and *Edwin Harvie Smith* for defendant.

WICKES, J.—

T. Marshall Smith, the defendant in this cause, had what he believed to be a valuable invention, not yet patented, for the disintregation of certain waste substances containing ammonia, so that they could be used in the manufacture of fertilizers. He was, however, without means to develop it. The plaintiffs, two of whom were men of some means in search of business, and one a practical machinist, entered into negotiations with the defendant, the object of which was to unite with him in the development of the process, and the manufacture and sale of the processed article. They investigated the matter as far as they could, sufficiently far indeed, to satisfy themselves that the process itself was a success, for Mr. Sloan, one of the plaintiffs, and the one who seems to have had charge of the whole matter, testified that *"we were convinced the process was in itself a success*, but we entered into this agreement with Mr. Smith in order to determine *whether the development of the patent for the process could be made of commercial value*." For this purpose, and with this object in view, the agreement, which forms the subject of this controversy, was entered into between the parties on February 3, 1892. The defendant, Smith, agreed to assign to the trustee named

in the contract (Henry J. Bowdoin), the "patent" or patents about to be issued to be "held by him upon the uses and trusts set forth, &c." Each of the plaintiffs stipulated to pay to said trustee the sum of $25,000 in the proportions set opposite their respective names, which sum is to be "so paid to the said trustee when and as the same may be needed and required in the opinion of the parties of the first part for the purposes herein set forth, that is to say, the said sum of $25,000 is to be expended in *the establishment and legitimate expenses of developing and operating 'said patents at once, and of putting the finished product of the process under said patents upon the market."* It was also agreed "that the title to all property, real and personal, used and accumulated by the means of said development and manufacture, are to be held by said trustee upon the uses and trusts hereafter set forth." A further provision of the agreement was that "in the event of the *business of disintegrating the substance under said patents proving a failure in the opinion of the parties hereto of the first part, or in the opinion of any one of said parties of the first part,"* that the contract is at an end, the trustee in that event to reconvey the patents to Smith, and hand over the property to the plaintiffs. In event, however, "of *the manufacture under said process proving a success,* in the opinion of the parties hereto of the first part and each of them, it is agreed a corporation shall be formed by the parties hereto of the first part with a capital of $50,000," to which company the trustee is required to make over the patents and all the property in his hands. Bearing in mind, therefore, that according to Mr. Sloan's testimony, the plaintiffs were satisfied before entering into the agreement that the process itself was a success, but that the point to be determined was, whether it could be made of commercial value, it is obvious, I think, that the plain meaning of the contract is that profitable manufacture by these parties was the object of the experiment, and upon its success or failure depended the further execution of the agreement. If in the opinion of any one of the plaintiffs "the *business* of disintegrating the substances" proved a failure, the contract was at an end.

If, on the contrary, "the manufacture under said process" proved a success, then it was to be carried out so that "business of disintegrating" in the one clause *is used as synonymous with* "manufacturing under said process" in the other, and taken in connection with other parts of the contract, and especially in connection with the conduct and expression of the parties themselves, both terms refer to the successful manufacture, in a commercial sense, of this commodity by themselves. The plaintiff's bill is to compel the defendant to assign the patent he now has to the trustee named in the agreement, which the defendant refuses to do for the reasons averred in his answer—that the plaintiffs refuse to spend any more money in accordance with their agreement and have in addition pronounced the process a failure, which puts an end to the contract. Thus a question of fact meets us at the threshold of the case, for it is admitted on all sides that if the experiment is to be regarded as a failure, within the meaning of the agreement in the opinion of one or more of the plaintiffs, that the contract and the case are at an end. Bearing, then, in mind the distinction between the success of the process, and the success of making and selling the product produced by it, for this was the object of the experiment, are we justified in finding from the evidence, that one of the plaintiffs considered that experiment a failure? Confessedly it was a failure at Canton, for Mr. Sloan states in his testimony that he had repeatedly said "that the business of manufacturing at Canton was a failure and that I did not intend to spend any more money upon it." * * * And further that "Blocher, one of the plaintiffs, became discouraged and disgusted with the business of manufacturing at Canton, as I myself did." He further testified as to the causes of failure, such as "slowness of the operation and the incidental loss of time, &c.", which, he adds *"would, in my judgment, have interferred with the success of a factory at any other place."* He then proceeds to express the opinion, that it is absolutely necessary that the process be used at a point where the material is produced *"and where it could be utilized in connection with some other business,"* so

as to economize labor, steam, &c. He admitted that he knew of no such place, "that being a matter for future investigation." Mr. Sloan also stated that he had no plan. He then adds "we claim the right to manufacture under conditions which might not require outlay of any more capital at once." Mr. Sloan's testimony therefore shows that not only was the experiment a failure at Canton, but that as an independent enterprise it would be a failure at any other point. That it could only be made profitable in connection with some other business, not to be conducted by the parties to the contract, for that nowhere appears, but as an adjunct to the business of some one else. But the testimony of the other witnesses in the case, conclusively, shows that what he really meant was that the process could only be made of commercial value if let out on the "royalty plan," that is hired out to whoever would use it and pay a percentage for it. Mr. Smith, the defendant, testified, and he is not contradicted, that Sloan said to him on several occasions at the factory that "the process was a failure—a complete failure." That Blocher had gone home perfectly disgusted, pronouncing this work a failure, we have made a great mistake * * * and all I want out of this thing now is my money." At the last of these experiments he said "Smith, the only way that I see out of this difficulty is to work the thing on the royalty plan * * *." He further said "they did not intend to spend any more money in this thing and that I could either take my choice to go on the royalty plan or not at all. Mr. Marbury, one of the plaintiffs' counsel, made the same statement as early as April to R. D. Smith, a brother of the defendant, "that Sloan and those interested with him had concluded that it cost too much money to put up factories and manufacture themselves, and they had decided to put the thing out on a royalty." Later on Mr. Marbury had several interviews with the defendant directly representing the plaintiffs and urged him to go on with these gentlemen on the royalty plan." Mr. Sloan himself subsequently called on defendant and renewed his proposition. To all of which, the defendant gave a negative reply, saying to Mr. Sloan, "I am ready to go on now with the business as we have understood it under the contract, but I do not see my way to surrender three-fifths of my rights under this patent to you or anyone else to place on a royalty." To the same effect is the testimony of Mr. Benhoff, for many years an engineer with the Maryland Ferterlizer Company.

He was present on two occasions, in May when the plaintiffs were experimenting and when the process was in his judgment successful, but he says that Mr. Sloan declared on both occasions "that thing is a failure—the only way to do the thing is to put it out on royalty."

The proof seems, therefore, to be clear that when Mr. Sloan says that this process can only be used to advantage, in connection with some other business, he meant, not as was contended in the argument, that they could build factories near enough to other factories to hire steam, labor, &c., but he meant the royalty plan, pure and simple, as "the only escape from their difficulty." The learned counsel for plaintiffs has filed an exception to all this testimony as to the so-called "royalty plan"; upon the ground that it is not a proper defense at this stage of the case, and that even if valid in itself, it is at variance with that set up in the answer and cannot be entertained. But I do not understand it to be intended as an independent defense. It is certainly a strong corroboration of the fact that the plan as tested is a failure to prove that another plan, not permissible under the contract, is suggested as the only way to make the process and manufacture a success. I can see no good reason why such evidence shall not be admitted for such a purpose.

It seems therefore to result from all this, that the plaintiff undertook to test by a voluntary expenditure of a considerable sum of money, the profit or loss resulting from the manufacture under a patent of an article to be placed by them on the market as a "finished product." A contract to this effect was entered into, if it failed the contract was to be at an end, if it succeeded, the manufacture was to go on by means of a company. It has failed so far as tested, and part of the money embarked in the experiment has been

lost. It is also the opinion of those who conducted the test, that it cannot be successfully worked out, as an independent enterprise, at any point. That it can only be made available in connection with some other business, and only then on the royalty plan. The independent manufacture as a business was what the parties to the contract contemplated and the contract itself provides for. To put out the process on a royalty was not contemplated by the parties and is a departure from the contract. This I think is clearly the state of the proof and this conclusion, by the terms of the agreement puts an end to it.

But it is said the letters, which passed between counsel in June last are fatal to this view, and one is especially referred to. It must be borne in mind that these letters were not written for the purpose of defining the sharp lines of attack and defense. Under date of June 16, Messrs. Barton & Wilmer, on behalf of defendant, submitted to Messrs. Marbury & Bowdoin, certain propositions looking to a settlement, in one of which they suggest that if the plaintiffs consider any further expenditure a useless waste of money, that they exercise the right reserved under the contract to declare the agreement with Mr. Smith ended. "They then ask for a proposition in return, by which the plaintiff shall acquire an equal right in the patent which the defendant would consider. The plaintiffs' counsel answered that they declined to entertain the propositions and had advised their clients to stand on their legal rights. Further correspondence took place of the same general character, all of which proved abortive as the suit now pending was the result. It is odd certainly that defendant's counsel should suggest that plaintiffs exercise a right, which their present contention shows has already been exercised. But it is not more singular than that plaintiffs should have rejected a proposition to go on under the contract, which was one of those submitted, protesting as they then and now do, their willingness to do so. But the *fact* is what the Court is trying to ascertain and not what counsel said about it, and this fact is abundantly proved in my opinion without the aid of defendant's testimony at all. So that whatever else

may be said of the letter in question, it can scarcely be considered of sufficient weight to establish by inference a conclusion at variance with the overwhelming testimony in the case. This finding relieves me of the necessity of passing upon the other questions presented, all of which depend upon a different conclusion. If the plaintiffs or any of them are of opinion that the experiment upon the success of which the further execution of the contract depends is a failure it puts an end to the contract and to his rights and remedies to it.

—*The bill must therefore be dismissed.*